IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY MARTEN | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | C.A.No. 08-77Erie |
| | ) | |
| DALE HUNT, et al., | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## MEMORANDUM OPINION [1]

Magistrate Judge Susan Paradise Baxter

### A.     Relevant Procedural History

On March 18, 2008, Plaintiff, a prisoner incarcerated at SCI-Albion in Albion, Pennsylvania, filed the instant action claiming that he has been the victim of myriad acts of retaliation by Defendants. As Defendants to this action, Plaintiff has named: Correctional Officer Dale Hunt; Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; the Attorney General of Pennsylvania; Lt. William McConnell, Kevin Lantz, Officer Hewitt; and Officer Grinnell.

Defendants have filed a motion to dismiss, or in the alternative, a motion for summary judgment. Document # 28. Plaintiff has filed a brief in opposition to the pending dispositive

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. Documents # 7, 18.

1

motion. Document # 31. The issues are fully briefed and are ripe for disposition by this Court.

**B.      Standards of Review**

    **1.      *Pro se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

    **2.      Motion to dismiss pursuant to 12(b)(6)**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader

is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, ___ 127 S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, ___ S.Ct. ___, ___ 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

In order to survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949. Determining whether a complaint states a plausible claim for relief requires a judge to draw upon her judicial experience and common sense. Id. at ___, 1950. Although at this stage the Court must accept all allegations as true and draw all reasonable inferences in the complainant's favor, we need not accept threadbare legal conclusions supported only by mere conclusory statements. Id.

### 3. Motion for summary judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court

5

must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**C.    Plaintiff's Allegations**

Plaintiff alleges that he suffered the following acts of retaliation at the hands of Defendant Correctional Officer Hunt after he filed two grievances in October of 2007:

> a. October 15, 2007 - Defendant opens Plaintiff's cell door at 9:00 AM, sticks his head in, and states "I can do what I want" and "Enjoy your cell restriction now because I am going to see to it that you get locked out."
>
> b. October 15, 2007 - Twenty minutes later, Defendant opened the cell door three times. When Plaintiff goes outside to ask what Defendant wanted, Defendant waved his radio and yelled at Plaintiff to lock up.
>
> c. Defendant stops Plaintiff whenever Plaintiff is leaving the unit to ask him where he is going, but he does not do the same with other inmates.
>
> d. Defendant refuses to open Plaintiff's cell door during meal lines, exercise periods, and scheduled call outs. Plaintiff pushed the call button to have his door opened, but Defendant turns off the call button.
>
> e. Defendant stared at Plaintiff on the toilet several times.
>
> f. October 16, 2007 - at 10:30 am while Plaintiff was on cell restriction, he pushed the call button to shower, but Defendant shut off the call button and refused to let Plaintiff shower. Ten minutes later, Sergeant Zintz instructed Defendant to let Plaintiff shower.
>
> g. October 16, 2007 - at 12:13 pm, Defendant conducted a general cell check.

6

> Defendant tells Plaintiff "I'm going to continue doing what I'm doing until you're locked up." Defendant closed Plaintiff's cell door with "extreme force, then looked through the cell door window and smiled."
>
> h. October 25, 2007 - Defendant entered Plaintiff's cell and ordered him to withdraw the two grievances. Defendant warned that if Plaintiff refused, he would have Plaintiff locked up for threatening an officer.
>
> i. October 26, 2007 - Defendant issued Plaintiff a fabricated misconduct which the hearing examiner ultimately dismissed.
>
> j. October 27, 2007 - Defendant enters Plaintiff's cell while Plaintiff was on the toilet, and stated "once you are locked up I will enjoy myself while archery hunting in Crawford County." Then, Defendant took Plaintiff's toilet paper roll stating "Let's see you do without this."
>
> k. On October 27, 2007, Plaintiff filed a DC-135A to the Superintendent. On November 9, 2007, Defendant kicks Plaintiff's cell door while Plaintiff was sleeping in order to wake him up. Then Defendant looked through the door and smiled.
>
> l. November 10, 2007 - Defendant intentionally spilled coffee on the floor of Plaintiff's cell.

Document # 6, pages 2-4. Besides arguing that these enumerated incidences constitute retaliation, Plaintiff also alleges they constitute equal protection violations under the Fourteenth Amendment. Plaintiff filed supplemental and subsequent amended complaints. Plaintiff alleges that the following acts are in retaliation for the filing of a grievance on August 10, 2008:

> aa. August 12, 2008 - Defendant Lantz tells Plaintiff that he did not appreciated the filing of the grievance and said "I will show you how I deal with inmates like you."
>
> bb. August 12, 2008 - Correctional Officers Hewitt and Grinnell searched Plaintiff's cell on orders from Defendant McConnell. During the course of the cell search, Plaintiff contends that Grinnell asks Plaintiff whether he thinks he is like an inmate who just won a case against the Department of Corrections, the Correctional Officers confiscate some of Plaintiff's personal property, and tear up his legal documents.
>
> cc. Hewitt subsequently issued a misconduct report against Plaintiff, presumably in retaliation for the August 10, 2008 grievance.

7

dd. Hewitt and Grinnell confiscated Plaintiff's personal property including a photo and a fan during the search.

ee. Hewitt and Grinnell destroyed Plaintiff's legal documents related to this case during the search.[2]

Documents ## 19, 25.

**D. The Retaliation Claims**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).[3]

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

---

[2] Even liberally construing this allegation, Plaintiff is not claiming that his access to courts was denied as he has not indicated that he has suffered actual injury. In order to state a claim for a denial of the right of access to the courts, a plaintiff must demonstrate actual injury. Lewis v. Casey, 518 U.S. 343 (1996). "Prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002). In this case, Plaintiff has not alleged such in his complaint.

8

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). The Third Circuit has directed that district courts should look carefully at allegations of retaliation. "Because of many prisoners' propensity to wield retaliation claims when confronted with disciplinary actions, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Sims v. Dragovich, 1999 WL 37621 (E.D.Pa. 1999), affirmed, 43 Fed.Appx. 523, 2002 WL 1800793 (3d Cir. 2002).

### 1) Prong One - Constitutionally Protected Conduct

The filing of grievances is constitutionally protected activity that satisfies the first prong of the *prima facie* case of retaliation. Robinson v. Taylor, 204 Fed.Appx. 155, at * 157 (3d Cir. November 7, 2006), citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003) and Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir.2003).

Plaintiff alleges that he suffered retaliatory conduct after he filed two grievances (#203903 on the morning of October 15, 2007, and #204212 in the afternoon of October 16, 2007), as well as a DC-135A request to the Superintendent filed on October 27, 2007.

A review of the initial grievance is important here. Plaintiff filed Grievance number 203903 on October 15, 2007 at 10:00 am. Plaintiff grieved:

> "Officer Hunt opened my cell door three times within a ten minute time frame (between 9:20 and 9:30am) and I stepped out of the cell each time to ask what he wanted and he would waive his radio in the air and yell at me to lock up. Hunt also came to my cell roughly around 9:00 am and opened my cell door with his keys. He stuck his head inside the doorway and said he was going to make my

9

> time miserable. He stated: "I can do what I want." Before leaving my cell he stated: "Enjoy your cell restriction now because I am going to see to it that you get locked up." It must be noted that Hunt has on numerous occasions singled me out to harass me. Examples of this would be during move times when I would be heading off the block to go to work, yard, or call-outs, Hunt would point me out of a crowd of inmates leaving the block and call be back to his desk to ask me where I am going. Hunt also harasses me by refusing to open my cell door during meal-lines or call-outs. When I push my call button to have my door opened he turns it off and refuses to open my door. Today I was denied my one hour yard privileges because Hunt refused to open my door when ½ time yard was called. Furthermore, hunt harasses me when I am using the toilet. He would come to my cell and stand at the door for several minutes just staring at me. When he does this I feel threaten (sic)."

Document # 13-2, page 2.

Plaintiff alleges that this grievance serves as the constitutionally protected activity that triggered the retaliation by Hunt. However, this is simply not possible as many of Plaintiff allegations that form the basis of the civil rights complaint are grieved in this initial grievance which allegedly triggered the retaliation conduct. Plaintiff has put the proverbial cart before the horse as this grievance cannot form the basis of the constitutionally protected conduct because the alleged retaliatory acts occurred before the grievance was filed.

Accordingly, every allegation in the complaint that stems from grievance #203903 cannot serve as the constitutionally protected conduct and therefore all these allegations must be dismissed. These include claims a)-e) (listed herein on page 7-8).

The filing of this first grievance on October 15, 2007 does satisfy the first prong of the *prima facie* case, so that the grievance can serve as the constitutionally protected conduct for the retaliatory acts alleged thereafter. Additionally, the filing of the grievance on August 10, 2008 satisfies the first prong for the alleged retaliatory acts that occurred thereafter.

### 2) Second Prong - Adverse Action

To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.

### Allegations of Verbal Abuse

Defendants argue that as to claims g), j), and k) against Defendant Hunt, and claim aa) against Defendant Lantz, Plaintiff has failed to satisfy the adverse action prong.

An inmate has no constitutional right to be free from verbal abuse. Carney v. Craven, 2002 WL 1315605 (6th Cir.). "Mere allegations of verbal abuse, threats, or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action." Fischl v. Armitage, 128 F.3d 50, 55 (2nd Cir. 1997). Use of derogatory racial epithets or slurs does not violate the due process clause of the Fourteenth Amendment, Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987), or the Eighth Amendment's prohibition against cruel and unusual punishment, Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987). See also Wright v. O'Hara, 2002 WL 1870479 (E.D. Pa. August 14, 2002).

While it is well established law that an inmate has no right to be free from verbal abuse, such a legal proposition does not automatically mean that verbal abuse is not adverse action for purposes of retaliation. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment rights.").

Here Defendant Lantz's remarks, without more, are not sufficiently severe enough to

11

deter a person of ordinary firmness from exercising his constitutional rights. As this is the only allegation against Defendant Lantz, he will be dismissed from this case as Plaintiff has failed to state a claim against him.

However, Defendant Hunt's ongoing verbal harassment, coupled with the allegations that Defendant Hunt demanded that Plaintiff withdraw two grievances and that Defendant Hunt filed a false misconduct against him, are sufficiently severe enough to deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff has satisfied the second prong of the case against Defendant Hunt.

### Cell Search and Misconduct

Cell searches and the resulting confiscation of property (if motivated solely by retaliatory motive) satisfy the adverse action prong. See Medina v. City of Philadelphia, 2004 WL 1126007, at * 7 (E.D.Pa. 2004) ("Certainly, confiscation [of personal property] could deter a prisoner from exercising his constitutional right to petition the court to redress future grievances."). Here, Plaintiff has satisfied the second prong of his *prima facie* case against Defendants McConnell, Grinnell and Hewitt.

### 3) Third Prong - Causal Connection

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the *prima facia* case."

12

Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

Here, Plaintiff has satisfied this prong as the remaining allegations against Defendant Hunt (f-l) have a suggestive temporal proximity to the filing of both grievances and the request to the Superintendent. Additionally, Plaintiff has satisfied the third prong in regards to the remaining allegations (bb and cc) against Defendants Hewitt, Grinnel and McConnell as there is a suggestive temporal proximity between the filing of the grievance and the alleged retaliatory conduct.

### 4) Shifting burden - Legitimate Penological Interest

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Defendants do not argue that Defendant Hunt's actions were taken for a legitimate penological interest. However, Defendants do make that argument on behalf of Hewitt, Grinnel, and McConnell. Defendants have provided evidence that on August 12, 2008, an investigatory cell search was conducted and several items of contraband were found. Document # 28-2, page 20. The search was initiated after staff saw Plaintiff with an unknown amount of suspicious

13

grievances in the dining hall.  Id. at 7.  Because of the contraband found during the search, Misconduct #B045163 was issued against Plaintiff for gambling or conducting a gambling operation or possession of gambling paraphernalia, possession of contraband, and lying to an employee.  Id. at 20. Plaintiff had a hearing on this misconduct and the record indicates that he pled guilty to all charges.  Id. at 21.

Defendants McConnell, Grinnell and Hewitt had a legitimate penological interest in the challenged action of the cell search and the misconduct.  Accordingly, summary judgment will be granted in their favor on this claim and they will be dismissed from this action.

### E.     *Respondeat Superior*

Next, Defendants argue that Beard and "the Attorney General of Pennsylvania" should be dismissed from this action because Plaintiff has not sufficiently alleged their personal involvement.  These Defendants are named only on the face of the original complaint.  See Document # 1.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Plaintiff makes no factual allegations against Beard or the Attorney General, and so they will both be dismissed from this action.

### F. The Equal Protection Claims

Plaintiff generally alleges, without explanation, that his right to equal protection has been violated. Plaintiff claims that he is a "class of one" because he has been singled out by Defendant Hunt. Defendants argue that Plaintiff has failed to state an equal protection claim upon which relief can be granted. Plaintiff has not opposed the motion to dismiss in this regard.

The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1. All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996). "Treatment of dissimilarly situated persons in

a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Even liberally construing the allegations of the *pro se* complaint, as we must under Haines v. Kerner (404 U.S. 519) and its progeny, Plaintiff has not identified any facts which rise to the level of a constitutional violation of his equal protection rights. Specifically, Plaintiff has not identified himself as being part of any protected class and has not identified how he has been treated dissimilarly from others who are similarly situated. See Gagliardi v. Clark, 2006 WL 2847409 (W.D. Pa. 2006) (class-of-one claim must be more than a bald assertion and legal conclusion). Because Plaintiff has failed to state a claim upon which relief may be granted in this regard, the equal protection claim will be dismissed.

**G.     Confiscation/Destruction of Personal Property**

The analysis of a due process claim stemming from the deprivation of a property interest focuses on the existence of a post-deprivation remedy. An unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a "meaningful post-deprivation remedy" available to the plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984). See also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 (3d Cir. 2000) ("[W]here it is impractical to provide meaningful pre-

deprivation process, due process will be satisfied by a meaningful post-deprivation remedy."). In Hudson, the Supreme Court reasoned that an intentional deprivation cannot be controlled in advance so as to adequately provide any pre-deprivation process. Id. See also Parratt v. Taylor, 451 U.S. 527 (1981)(held that a negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate post-deprivation state remedy exists), overruled on other grounds, Daniels, 474 U.S. 327. Thus, Plaintiff has no viable claim under the Constitution if an adequate post-deprivation remedy was available to him.

The prison grievance system has been deemed an adequate post-deprivation remedy. Tillman, 221 F.3d at 421. This Court takes judicial notice of the fact that the Department of Corrections has a grievance system in place. Because Plaintiff had adequate post-deprivation remedies available to him to contest the loss of his personal property, his due process claims fail. Accordingly, this claim will be dismissed.

**H.    Eleventh Amendment Immunity**

To the extent that the remaining claims against Defendant Hunt are advanced against him in his official capacity, they are dismissed from this action based upon the immunity granted by the Eleventh Amendment.

The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity). The only ways that a state may be sued in federal court are if (1) the

state has waived its Eleventh Amendment immunity (<u>Kentucky v. Graham</u>, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (<u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356 (2001)).  Neither of these is evidenced here.

Accordingly, the motion to dismiss is granted in this regard.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY MARTEN )<br>    **Plaintiff** )<br>)<br>vs. )<br>)<br>DALE HUNT, et al., )<br>    **Defendants.** ) | C.A.No. 08-77Erie<br><br>Magistrate Judge Baxter |

**O R D E R**

AND NOW, this 29th day of June, 2009;

IT IS HEREBY ORDERED that the motion to dismiss, or in the alternative, for summary judgment filed by Defendants [document # 28] is GRANTED IN PART and DENIED IN PART. More specifically,

- the motion to dismiss is GRANTED as to claims **a-e** (listed herein at pages 7-8) against Defendant Hunt as Plaintiff has failed to state a *prima facie* case of retaliation;

- the motion to dismiss is DENIED as to claims **f-l** against Defendant Hunt;

- the motion to dismiss is GRANTED as to claim **aa** against Defendant Lantz as Plaintiff has failed to state *prima facie* claim of retaliation against him. The Clerk of Courts is directed to terminate Defendant Lantz from the docket;

- the motion for summary judgment is GRANTED as to the claims against Defendants McConnell, Grinnell and Hewitt. The Clerk of Courts is directed to terminate these three Defendants from the docket.

- the motion to dismiss is GRANTED as to Defendants Beard and Attorney General of Pennsylvania as Plaintiff has failed to state a claim against them. The Clerk of Courts is directed to terminate these two Defendants from the docket.

- the motion to dismiss is GRANTED as to the equal protection claim;

19

- the motion to dismiss is GRANTED as to the destruction of personal property claims;

- the motion to dismiss is GRANTED as to the official capacity claims against Defendant Hunt.

The only remaining claims to this civil rights action are the retaliation claims against Defendant Hunt in his individual capacity listed herein as **f-l** (and contained within the original complaint - Document # 6). Case Management deadlines will be issued by separate Order.

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge